### A11A1883. SANDS et al. v. LINDSEY.
(723 SE2d 471)

ELLINGTON, Chief Judge.

David Sands appeals from the trial court's grant of summary judgment to Elizabeth Lindsey on his premises liability claim.[1] He contends that Lindsey is not entitled to summary judgment because jury issues remain on whether he was an invitee or a licensee on her premises and, if the jury determines that he was a licensee, whether Lindsey's negligence was wilful or wanton. For the following reasons, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment

---

[1] Sands' wife, Rebecca, asserted a claim for loss of consortium and is a party to this appeal.

as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Punctuation and footnote omitted.) *Jones v. Murphy*, 306 Ga. App. 539 (703 SE2d 26) (2010).

So viewed, the record shows the following facts. In the pre-dawn hours of December 30, 2006, Lindsey called 911 and asked for an ambulance because her brother was having difficulty breathing. Sands is a certified emergency medical technician ("EMT"), and he and his partner, Trey Kent, were dispatched to Lindsey's home pursuant to the emergency call. Sands testified that, due to the seriousness of an emergency call involving respiratory difficulty, he grabbed his equipment bag as soon as they arrived at Lindsey's house and hurried for the house while his partner retrieved an oxygen tank from the ambulance. The external lights were not turned on to illuminate the house, even though it was still dark outside and Lindsey knew that emergency workers had been dispatched to her home. There was a light on inside the house, however, and the inner wooden front door was open, so Sands could see directly into the house through the doorway, which he described as "crystal clear." It is undisputed that there were no markings or stickers to warn that there was a closed glass storm door obstructing the doorway. Sands watched his feet as he stepped onto the porch, then looked up and through the doorway into the house, walked a few steps forward, and "slammed" into the glass storm door. The collision was so loud that his partner thought Sands had been shot with a gun. Sands staggered and fell back against a wall. When Lindsey came out of the house, Sands asked her, "Who would have opened a wooden door, and not a glass door?" Lindsey responded, "Well, I'm sorry. I just cleaned [the glass storm door]." Lindsey admitted that she had opened her inner wooden door because she knew that emergency workers were on their way, but she had left her glass storm door closed.

As a result of his collision with the door, Sands suffered pain in his neck and shoulders, a facial laceration, a concussion, an "excruciating headache," nausea and vomiting. In addition, he was subsequently diagnosed with three herniated cervical disks. He filed a premises liability suit against Lindsey, and Lindsey answered and filed a motion for summary judgment. Following a hearing on the

motion,[2] the trial court granted the motion, and Sands appeals.

To recover for damages in a premises liability action,

> the [plaintiff] must prove (1) that the owner had actual or constructive knowledge of the hazard, and (2) that the plaintiff lacked knowledge of the hazard, despite the exercise of ordinary care, due to actions or conditions within the control of the owner. With respect to the first element, a defendant moving for summary judgment discharges its burden by pointing out by reference to the record that there is an absence of evidence to support the plaintiff's case. The plaintiff's evidentiary proof concerning the second prong is not shouldered until the defendant establishes negligence on the part of the plaintiff — i.e., that the plaintiff intentionally and unreasonably exposed [him]self to a hazard of which the plaintiff knew or, in the exercise of ordinary care, should have known. Moreover, premises liability cases are not susceptible to summary adjudication except where the evidence is plain, palpable, and undisputed.

(Citations, punctuation and footnotes omitted.) *Helton v. Riverwood Intl. Corp.*, 261 Ga. App. 62, 63 (581 SE2d 687) (2003).

1. Sands contends that a jury issue exists on whether he was an invitee or a licensee at the time he was injured.[3]

Generally, a person is an invitee when "an owner or occupier of land, by express or implied invitation, induces or leads [him or her] to come upon his premises for any lawful purpose." OCGA § 51-3-1. In contrast, a licensee is a person who "(1) [i]s neither a customer, a servant, nor a trespasser; (2) [d]oes not stand in any contractual relation with the owner of the premises; and (3) [i]s permitted, expressly or impliedly, to go on the premises merely for his own interests, convenience, or gratification." OCGA § 51-3-2 (a).

Notwithstanding the statutory distinction between an invitee and a licensee, however, it has long been the rule in Georgia that police officers and firefighters who enter private property in their professional capacity occupy the position of licensees, not invitees, even when they are responding to an explicit request for emergency assistance made by the premises' owner or occupier. See *London Iron &c. Co. v. Abney*, 245 Ga. 759, 760-761 (1) (267 SE2d 214) (1980) (a police officer who entered a premises in order to respond to a burglar alarm was a licensee as a matter of law); *Aldredge v. Symbas*, 248 Ga.

---

[2] The hearing was not transcribed.

[3] The determination of Sands' status delineates what duty Lindsey, as the premises owner and occupier, owed to him, as explained in Division 2, infra.

App. 578, 579 (547 SE2d 295) (2001) (a police officer who was chasing a suspected criminal when he entered the premises was a licensee as a matter of law); *Wilbanks v. Echols*, 209 Ga. App. 210, 211-212 (433 SE2d 134) (1993) (physical precedent only) (a volunteer firefighter who was crossing the premises in order to fight a fire was a licensee as a matter of law).[4] The Supreme Court of Georgia has adopted the following explanation for the rule:

> [E]xpress permission [to enter a premises] constitutes an invitation only if circumstances imply an assurance that the premises have been prepared and made safe for the particular visit. . . . [Thus, the] one really valid basis for classifying policemen as licensees as opposed to invitees is that policemen are likely to enter at unforeseeable times, upon unusual parts of the premises, and under circumstances of emergency, where care [by the owner or occupier] in looking after the premises, and in preparation for the visit, cannot reasonably be looked for.

(Citations and punctuation omitted.) *London Iron &c. Co. v. Abney*, 245 Ga. at 760 (1), citing Prosser, Torts, § 60, p. 378 (4th Ed. 1971). In other words, in unexpected, time-sensitive, emergency situations, when owners or occupiers of property may be distracted by the emergency, it would be unreasonable to expect them to exercise the same level of care in taking whatever precautions are necessary to ensure that their property is safe for those entering the property — even those they have summoned — as they would be required to exercise for invitees in nonemergency situations. See *Baxley v. Williams Constr. Co.*, 98 Ga. App. 662, 669 (1) (106 SE2d 799) (1958) (physical precedent only) (This Court explained that the basic reason for concluding that a fireman who is on a premises to fight a fire holds the status of a licensee "is that it is impossible to forecast the precise place where or time when the fireman's duties may call him, and to require an owner or occupier of premises to exercise at all times the high degree of care owed to an invitee in order to guard against so remote and unpredictable an injury would be an intolerable burden which it is not in the best interest of society to impose.") (citations omitted).

Although Georgia's appellate courts have not directly addressed the status of EMTs, such as Sands, who are injured while responding

---

[4] See also *Ingram v. Peachtree South*, 182 Ga. App. 367, 368 (355 SE2d 717) (1987) (This Court noted that, "[i]n view of the statutory language defining a licensee, it would perhaps be more appropriate to state . . . that firemen are sui generis[,] but [are] treated on the same footing as licensees.") (citation and punctuation omitted).

to an emergency call, we believe it is appropriate to apply the same analysis in this case. Given the emergency circumstances with which Lindsey was faced, it would be unreasonable to expect her to have exercised the same degree of care in preparing her home and property for the arrival of the emergency personnel as she would have been required to exercise before welcoming an invitee in a nonemergency situation.

Accordingly, we conclude that, under the circumstances presented in this case, Sands was a licensee as a matter of law. *London Iron &c. Co. v. Abney*, 245 Ga. at 760-761 (1).

2. Sands contends that, even if he was a licensee as a matter of law, a jury issue exists on whether Lindsey was wilfully or wantonly negligent. Under OCGA § 51-3-2 (b), a premises owner "is liable to a licensee only for willful or wanton injury."

> The statutory liability for wilful or wanton injury to licensees [under OCGA § 51-3-2 (b)] means that the landowner owes a duty to a licensee *only to avoid knowingly letting him run upon a hidden peril or wilfully causing him harm.* Thus, where the owner (as here) is aware of the licensee's impending presence on the premises, it is usually wilful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be, or may reasonably be expected to be, within the range of *a dangerous act* being done or *a hidden peril* on one's premises.

(Punctuation and footnote omitted; emphasis in original.) *Jones v. Murphy*, 306 Ga. App. at 540.

In this case, Sands does not claim that Lindsey wilfully injured him or that the glass storm door constituted a mantrap.[5] Instead, he contends that Lindsey acted wantonly, i.e., knowingly letting him run into an inherently dangerous hazard or a hidden peril, and relies on evidence that Lindsey was in the living room near the front door while waiting for the ambulance to arrive, yet she failed to meet him at the door. In addition, he contends that Lindsey should have turned on the house's exterior lights. Finally, he argues that Lindsey should have exercised greater care because she was an "experienced veteran in handling the arrival of EMTs at her residence," a claim that was based upon evidence that she had called 911 in the past on several

---

[5] See *Aldredge v. Symbas*, 248 Ga. App. at 580 ("The doctrine of mantrap or pitfall rests upon the theory that the owner is expecting a trespasser or a licensee and has prepared the premises to cause him injury. Examples of mantraps or pitfalls include spring guns, traps deliberately set to do injury, or other perils which have been hidden by an owner intending to inflict injury.") (punctuation and footnotes omitted).

occasions for either her husband or her brother. Sands, however, has failed to cite to any authority to support a conclusion that Lindsey's oversights evidenced a wanton disregard for his safety, as opposed to mere negligence, that would constitute a breach of her duty to him as a licensee, and we decline to so hold.

Moreover, Sands has failed to present evidence to support any other basis for finding that Lindsey may have breached her duty to him, such as evidence of a defect in the construction or installation of the door or that the door, as installed, was inherently dangerous.[6] Further, there is no evidence that anyone else visiting Lindsey's property had ever inadvertently collided with the door.[7]

Accordingly, we conclude that Sands has failed to demonstrate that a jury issue exists as to whether Lindsey breached her duty to him as a licensee. It follows that the trial court did not err in granting summary judgment to Lindsey.

*Judgment affirmed. Doyle, P. J., and Miller, J., concur.*

DECIDED FEBRUARY 16, 2012.

*Terry R. Barnick*, for appellants.

*Young, Thagard, Hoffman, Smith & Lawrence, James B. Thagard, Stephen D. Delk, Savell & Williams, Edward P. Denker*, for appellee.

---

[6] See *Powell v. Watson*, 176 Ga. App. 559, 559-560 (337 SE2d 403) (1985) (The premises' owner and occupier were entitled to summary judgment on the claim by a licensee for injuries sustained in a fall that resulted from a defect in the premises' staircase, because it was undisputed that the owner and occupier were unaware of the defect prior to the fall and the defect was not observable upon inspection.).

[7] Cf. *Jones v. Murphy*, 306 Ga. App. at 540 (noting that the appellee homeowner was aware that two of her guests had "bumped" into a closed glass sliding door hours before the appellant "crashed" through the same closed door).