**FIRST DIVISION
BARNES, P. J.,
GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**December 23, 2024**

# In the Court of Appeals of Georgia

A24A1303. SHEDEKE v. GARRETT.

GOBEIL, Judge.

Kwabena Shedeke, an officer with the Stone Mountain Police Department ("SMPD"), sustained injuries while responding to a call for police assistance at a residence. He filed a premises liability suit against the homeowner, Patricia Garrett, and the trial court granted Garrett's motion for summary judgment. On appeal, Shedeke argues that the trial court erred by (1) ruling that Shedeke was a licensee, rather than an invitee; and (2) finding that Garrett's conduct was neither wanton nor willful. For the reasons explained more fully below, we affirm.

Summary judgment is appropriate when no genuine issue of material fact exists for consideration by a jury, entitling the movant to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we

view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Glover v. Ga. Power Co.*, 347 Ga. App. 372, 373 (819 SE2d 660) (2018) (citation and punctuation omitted).

Thus viewed in favor of Shedeke as the nonmovant, the record shows that on August 20, 2018, Garrett arrived at her home and discovered a large hole in the concrete of her front porch. She contacted SMPD to report the damage, and Officer Julio Aponte was dispatched to Garrett's home to investigate. Aponte reviewed information about the incident using the computer assisted dispatch ("CAD") system in his police vehicle, which indicated that the complaint was: "In reference to property damage, advised there is a hole in her porch." All officers in the SMPD have access to the same CAD system.

When Officer Aponte arrived on the scene, he met Garrett at her home's side door, where she was outside waiting for him, and she showed him the damage to the front porch. While at Garrett's residence, Aponte received a higher priority call, to which he had to respond immediately, but he informed Garrett that he would return to complete his report and investigation after responding to the other call. He did not

mention that another officer would be coming to Garrett's house. After Aponte left, Garrett moved several large potted plants to the base of the steps leading up to her front porch in an effort to block access to the porch. A neighbor placed a large piece of plastic over the hole to prevent Garrett's cats from falling in.

Officer Shedeke was then dispatched to Garrett's home. Shedeke did not remember calling Garrett before he went to her residence, and he could not recall if he looked at the CAD display to determine the nature of the call. At his deposition, Shedeke testified: "I knew it [sic] was a hole in the porch, but you couldn't see it when you walk up those steps there."

After he exited his patrol vehicle, Shedeke climbed over the plants, ascended the steps, and rang the doorbell. Before Garrett answered, Shedeke turned around (so that his back was to the front door) and fell into the hole. Shedeke's body camera captured the events, and the recording of the incident clearly shows that approximately three seconds elapsed from when he rang the doorbell to his falling in the hole. At his deposition, Shedeke described that, although officers are trained to approach a home's front door in most instances, they have discretion to decide to go to another entrance if the front door is not a safe option. He admitted that as he was

walking up the steps, he did not look for a hole in the porch because he did not know where the hole was located.

Shedeke filed a complaint against Garrett, alleging that Garrett breached the duty of care she owed to Shedeke as an invitee on her property. Following discovery, Garrett filed a motion for summary judgment, which the trial court granted after a hearing. In its order, the trial court ruled that Shedeke was a licensee at the time he was injured on Garrett's property. As such, she owed him a duty "only to avoid knowingly letting him run upon a hidden peril or willfully causing him harm." Because Shedeke failed to demonstrate that Garrett had intended to injure him, the trial court ruled that his negligence claim failed. This appeal followed.

1. Shedeke first argues that the trial court erred in concluding that his status, for purposes of analyzing his underlying premises liability claim, was that of a licensee, rather than an invitee.

> The legal duty of care owed by a landowner to a person coming upon the property varies and is fixed according to the legal status of the person entering the premises. A landowner owes the highest duty — the duty of ordinary care — to an invitee. A landowner owes a lesser duty — to avoid causing wilful or wanton injury — to a licensee.

4

*Scott v. Forest Acres Full Gospel Church*, 352 Ga. App. 145, 148 (834 SE2d 286) (2019) (citation and punctuation omitted). Generally, an invitee is one who enters the premises for any lawful purpose "by express or implied invitation[.]" OCGA § 51-3-1. On the other hand, a licensee is one whose visit is "merely for his own interests, convenience, or gratification." OCGA § 51-3-2 (a) (3).

> Notwithstanding the statutory distinction between an invitee and a licensee, however, it has long been the rule in Georgia that police officers and firefighters who enter private property in their professional capacity occupy the position of licensees, not invitees, even when they are responding to an explicit request for emergency assistance made by the premises' owner or occupier.

*Sands v. Lindsey*, 314 Ga. App. 160, 162 (1) (723 SE2d 471) (2012). The rationale underlying this rule, known as the "fireman's rule,"[1] is that in unexpected, time-sensitive, emergency situations, "it would be unreasonable to expect [property owners] to exercise the same level of care . . . to ensure that their property is safe for those entering the property — even those they have summoned — as they would be required to exercise for invitees in nonemergency situations." Id. at 163 (1). According

---

[1] See *Kapherr v. MFG Chemical, Inc.*, 277 Ga. App. 112, 112 (625 SE2d 513) (2005).

to Shedeke, because the situation at Garrett's house was not an emergency, his status was that of an invitee.

We disagree with Shedeke's contention that application of the fireman's rule is appropriate only in emergency situations. To the contrary, this Court has held that "public safety employees . . . are precluded from recovery for injuries received when they are injured as a result of the negligence that caused them to be called to the scene." *Martin v. Gaither*, 219 Ga. App. 646, 651 (466 SE2d 621) (1995). Put another way, "[t]he relevant inquiry is whether the negligently created risk which resulted in the fireman's or policeman's injury was the very reason for his presence on the scene in his professional capacity. If the answer is yes, then recovery is barred[.]" *Bycom Corp. v. White*, 187 Ga. App. 759, 762 (1) (371 SE2d 233) (1988) (citation and punctuation omitted).

The facts here fall squarely within the fireman's rule. Specifically, the uncontroverted evidence shows that Shedeke was present on Garrett's property in his professional capacity, responding to a call about a hole in Garrett's porch, and he was injured when he fell into that same hole. Accordingly, the trial court did not err in concluding that Shedeke occupied the status of a licensee as a matter of law. *London*

6

*Iron & Metal Co., Inc. v. Abney*, 245 Ga. 759, 760-761 (1) (267 SE2d 214) (1980) (holding that police officer who was injured while responding to burglary alarm was licensee); *Kapherr v. MFG Chemical, Inc.*, 277 Ga. App. 112, 113-114 (1) (625 SE2d 513) (2005) (affirming grant of summary judgment in favor of defendant chemical plant based on the application of the fireman's rule where plaintiff EMT sustained asthmatic injuries after responding to scene where toxic chemicals had been released because EMT was a licensee and she was "injured as a result of the negligence (accidental release of toxic fumes) that necessitated her presence at the scene").

2. Shedeke also argues that, even if the trial court properly characterized him as a licensee, the court erred by failing to find that Garrett's conduct was wanton and willful. As relevant here, Shedeke contends that Garrett's act of covering the hole with a piece of plastic demonstrates that her conduct "willfully and wantonly expose[d]" Shedeke to a hidden peril. We disagree.

As noted above, a landowner owes a duty to a licensee to refrain from injuring the licensee "wantonly or willfully . . . after the owner becomes aware of or should anticipate the presence of a licensee near the peril." *Jones v. Barrow*, 304 Ga. App. 337, 339 (1) (696 SE2d 363) (2010) (citation and punctuation omitted). Wanton and

willful conduct requires a showing that the defendant engaged in "conduct such as to evidence a willful intention to inflict the injury, or else was so reckless or so charged with indifference to the consequences as to justify the jury in finding a wantonness equivalent in spirit to actual intent." *Martin*, 219 Ga. App. at 652 (citation and punctuation omitted).

Here, the undisputed evidence shows that Garrett informed SMPD of the specific damage to her property, and this description was uploaded to the department's CAD system, which was available to all of the officers. Officer Aponte, who had viewed the hole in the porch, told her that he would come back to her house to complete his investigation and report. Garrett was unaware that a different officer would be coming to her property, much less that the officer might be unaware of the reason for her request for police assistance in the first place. In addition, Garrett attempted to block access to the porch where the hazard was located by placing large potted plants at the base of the steps leading up to the porch. This evidence is insufficient to create a jury issue as to whether Garrett intended to inflict injury or was so indifferent to the consequences as to impute intent under the circumstances present in this case. See *Sands*, 314 Ga. App. at 161, 164-165 (2) (plaintiff EMT, who

8

suffered injuries after running into glass storm door while responding to emergency call for medical assistance, failed to present evidence sufficient to create jury issue as to whether defendant homeowner acted wantonly, despite EMT's contentions that homeowner should have met him at the door and turned on the home's exterior lights); *Martin*, 219 Ga. App. at 646-647, 652-653 (defendant driver's mere failure to obey traffic signs and/or officer's instructions insufficient to create fact issue as to defendant's willfulness or wantonness where officer was hit by bus while directing defendant driver to move her car).

Accordingly, because Shedeke has failed to demonstrate that a jury issue exists as to whether Garrett breached the duty she owed him as a licensee, the trial court did not err in granting summary judgment to Garrett.

*Judgment affirmed. Barnes, P. J., and Pipkin, J., concur.*